UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS FRUSHOUR,

        Petitioner,

v.

UNITED STATES OF AMERICA,

        Respondent.

                              /

Criminal Case No. 16-20226-1

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
R. STEVEN WHALEN

**ORDER GRANTING PETITIONER'S MOTION FOR COMPASSIONATE RELEASE [31]**

On July 23, 2020, Thomas Frushour filed a Motion for Compassionate Release [26] asking this Court for his immediate compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) from Federal Correctional Institution ("FCI") Milan due to the COVID-19 pandemic. (ECF No. 26). Petitioner filed a Supplemental Brief [34] on August 7, 2020. (ECF No. 34). The Government filed a Response [35] on August 11, 2020. (ECF No. 35). The Court held a hearing on the motion on August 13, 2020. For the reasons stated below, and on the record, the Court **GRANTS** Frushour's Motion for Compassionate Release [31].

**FACTUAL BACKGROUND**

On September 6, 2016, the Court sentenced Mr. Frushour to 108 months (9 years) of imprisonment for Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2). (ECF No. 24). His projected release date is July 17, 2024.

Mr. Frushour is 78 years old. He suffers from a myriad of health conditions including Type II diabetes, a heart murmur, hyperlipidemia, limited kidney function, and skin cancer. (ECF No. 34-2). Frushour also recently underwent bariatric surgery to treat his morbid obesity. (*Id.*).

Frushour first asked his warden for compassionate release on July 5, 2020 due to his vulnerability to the Covid-19 virus (ECF No. 31, PageID. 169-70). Mr. Frushour has not provided the Court with a response from the warden regarding his request.

## ANALYSIS

The compassionate release statute states the following in relevant part.

> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > **(i)** extraordinary and compelling reasons warrant such a reduction.

18 U.S.C.A. § 3582.

Because 30 days has lapsed since Frushour's request for compassionate release, there is no dispute that Frushour has exhausted his administrative remedies. *See United States v. Alam*, 960 F.3d 831 (6th Cir. 2020). The Court thus has three questions to answer:

first, whether extraordinary and compelling reasons warrant a reduction in sentence, second, whether Frushour poses a danger to the community, and third, whether a sentence reduction is consistent with the § 3553(a) factors. *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *4 (E.D. Mich. May 7, 2020).

1. Extraordinary and Compelling Reasons for Release

In order to determine if extraordinary and compelling reasons exist to release Frushour, the Court must determine if a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The applicable policy statement recites the following:

> **1. Extraordinary and Compelling Reasons.--**Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
> **(A) Medical Condition of the Defendant.--**
> **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> **(ii)** The defendant is--
> > **(I)** suffering from a serious physical or medical condition,
> > **(II)** suffering from a serious functional or cognitive impairment, or
> > **(III)** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover
> > [. . .]
>
> **(C) Family Circumstances of the Defendant.--**
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children

> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
> **(D) Other Reasons.--**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. 1B1.13

Here, Frushour has presented "Other Reasons" in combination with his serious medical conditions, to warrant compassionate release. While the COVID-19 pandemic is devastating in every region it invades, prison populations are subject to heightened vulnerability. *See, e.g.*, Danielle Ivory, *"We Are Not a Hospital": A Prison Braces for the Coronavirus*, N.Y. Times (March 17, 2020), https://www.nytimes.com/2020/03/17/us/coronavirus-prisons-jails.html (citing densely populated living conditions, shortage of masks, soap, and hand sanitizer, and the inability to routinely disinfect surfaces and maintain safe distances between inmates and guards as reasons prisoners are at increased risk of infection); *See, e.g.*, Courtney Bublé, *Federal Prisons Pose 'Imminent Danger' in Spreading COVID-19, Union Says*, Government Executive (April 6, 2020), https://www.govexec.com/oversight/2020/04/federal-prisons-pose-imminent-danger-spreading-covid-19-union-says/164390/ (detailing a prison workers' union complaint to OSHA complaining of "imminent danger" due to the BOP's failure to follow national safety guidelines).

Furthermore, the persuasive precedent for granting compassionate release under the current circumstances is overwhelming. *United States v Andre Williams*, Case No. 04-cr-95/MCR, at *7 (N.D. Fla. April 1, 2020) ("[A]n outbreak of COVID-19 in Williams' facility would likely have fatal consequences for him. Based on these facts, the Court finds that Williams' deterioration in physical health is sufficiently serious to satisfy the medical criteria for a reduction in sentence."); *see also United States v. Teresa Ann Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *3 (E.D. Wash. Mar. 31, 2020); *United States v. Campagna*, No. 16 Cr. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020); *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325 (S.D. Tex. Mar. 30, 2020), at *2.

Frushour argues that his underlying conditions warrant similar treatment and the Government does not dispute this. His age and severe health conditions place him at high risk for serious illness or death from COVID-19. *People with certain Medical Conditions, Centers for Disease Control and Prevention,* CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited August 13, 2020).

Furthermore, the Court's concern for Frushour's safety is underlined by the fact that the warden at FCI Milan has denied all 235 requests for compassionate release received as of May 29, 2020. *United States v. Snell*, No. 16-cr-20222-6, ECF No. 422, PageID. 3279 (E.D. Mich. May 29, 2020). The prison's report of 366 people tested at FCI Milan translates into only 27% of the prison population, and of those tested, 26%

tested positive for the virus. *COVID-19*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Aug. 14, 2020). Frushour also informs the Court that he is currently housed in a unit where 13 out of the 55 inmates have tested positive for the virus and spent only 10 days in quarantine before returning to Frushour's unit. (ECF No. 31, PageID. 160). Considering the severity of Frushour's ailing health, the Court refuses to allow him to be continually exposed to a deadly virus hidden in plain sight. Therefore, extraordinary and compelling reasons exist for Frushour's immediate compassionate release.

2. Danger to the Community

Federal Sentencing Guideline 1B1.13 provides for compassionate release only when "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. 1B1.13. The Government solely opposes Frushour's release based on the potential danger to the community he poses and relies on his past criminal conduct and lack of sex offender treatment during his incarceration. (ECF No. 35, PageID. 228). Despite this, the Court finds sufficient evidence of Frushour's rehabilitation to warrant his release.

While on bond, Frushour committed no additional offenses and participated in sex offender treatment at the Eastwood Clinic. (PSR ¶ 49). FCI Milan, however, does not offer sex offender treatment and Frushour was not willing to transfer to a different prison to receive it. (ECF No. 34, PageID. 193-94; ECF No. 35, PageID. 228). Despite this, Frushour's disciplinary history at Milan was spotless and he spent much of his time

pursuing his artistic interests and taking courses that prepared him for release. (ECF No. 34-4). Due to this track record, the BOP's PATTERN assessment classified Frushour at the lowest risk of recidivism. (ECF No. 34-5).

Most importantly, Frushour has taken full responsibility for his actions and is willingly to participate in his supervised release conditions, which includes continued sex offender treatment. (ECF No. 34; PSR ¶ 34). There is no evidence that Frushour has sexually abused any children since his last offenses over 50 years ago in 1962 and 1964. (PSR ¶ 17). Further, there is no evidence that Frushour will regress, especially considering the specific deterrent effect of almost four years in prison on a man of his advanced age and ailing health.

The Court also takes comfort in the fact that his wife will support him in his transition from incarceration. (ECF No. 26, PageID. 135, 142). Upon his release, Frushour plans to reside with his wife in Samaria, Michigan, which is five minutes away from his medical care at the Family Medical Center in Temperance, Michigan. (*Id.*). Additionally, Frushour has already registered as a sex offender with the Monroe Police Department and plans on reaching out to them upon his release.

<u>Section 3553(a) Factors</u>

A district court contemplating a motion for compassionate release must also consider the § 3553(a) sentencing factors. Those are as follows:

> **(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with

> the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed--
> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> **(B)** to afford adequate deterrence to criminal conduct;
> **(C)** to protect the public from further crimes of the defendant; and
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence and the sentencing range established for--
> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

18 U.S.C.A. § 3553.

The Court's consideration of these factors is explicated both in this opinion's analysis of U.S.S.G. 1B1.13 and on the record of the August 13, 2020 hearing. Frushour's crimes were serious, but any potential danger to the community is mitigated by the amount of time he served, his family support, and his supervised release conditions. Finally, the Court's original sentence, while appropriate, was never intended to be a death sentence. The potential danger of Frushour's medical conditions outweighs any marginal benefit he would receive from finishing his remaining time in prison in midst of a pandemic. Compassionate release is therefore in line with the § 3553(a) factors.

## CONCLUSION

**IT IS ORDERED** that Petitioner's Motion for Compassionate Release [31] is **GRANTED**.

**IT IS FURTHER ORDERED** that BOP officials at FCI Milan shall immediately release THOMAS FRUSHOUR (54502-039).

**IT IS FURTHER ORDERED** that upon his release, Frushour must complete a 14-day **QUARANTINE** at his home in Samaria, Michigan.

**IT IS FURTHER ORDERED** that upon his release, Frushour will begin his 5-year term of **SUPERVISED RELEASE**, as outlined by the September 13, 2016 Judgment. (ECF No. 24).

**SO ORDERED**.

Dated: August 14, 2020

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge